WARNOCK, MacKINLAY & CARMAN, P.L.L.C.
1019 South Stapley
Mesa, Arizona 85204
(480) 898-9239

J. Kent MacKinlay, No. 7204
Attorney for Debtor

IN THE UNITED STATES BANKRUPTCY COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| In re<br><br>ALLAN OLSEN AND WENDI RAE OLSEN LLC<br><br>      Debtors. | **Chapter 11**<br><br>**No. 2-09-bk-16352-GBN**<br><br>**DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF REORGANIZATION** |

## I.    INTRODUCTION

This disclosure statement is submitted by Allan and Wendi Olsen, husband and wife, ("Olsen") or ("Debtor") as debtor in possession herein, preparatory to submitting their Plan of Reorganization ("the Plan") to their creditors for acceptance. Olsen shall file a Plan with the U.S. Bankruptcy Court for the District of Arizona ("the Court"), which has jurisdiction over this Chapter 11 bankruptcy case.

A copy of the proposed Plan is submitted herewith as an Exhibit A hereto. All parties who receive this Statement preparatory to voting on the acceptability of the Plan should study the Plan carefully and should consult their counsel with regards to its impact on their legal rights, before voting on the Plan. In the event of any discrepancy between this Statement and the Plan, the terms of the Plan control.

Olsen believes that, for the reasons set forth in this Disclosure Statement, the Plan represents the best possible return for creditors of the estate in the quickest possible time. Accordingly, Olsen recommends that creditors vote to accept the Plan.

NO REPRESENTATIONS CONCERNING THE DEBTORS OR THE PLAN ARE AUTHORIZED OTHER THAN AS SET FORTH HEREIN. ANY REPRESENTATIONS OR

INDUCEMENTS TO SECURE YOUR ACCEPTANCE OF THE PLAN OTHER THAN AS CONTAINED HEREIN SHOULD NOT BE RELIED UPON BY YOU.

OLSEN IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT ANY INACCURACY, ALTHOUGH ALL SUCH INFORMATION IS ACCURATE TO THE BEST OF OLSEN'S KNOWLEDGE AND BELIEF. THE FINANCIAL INFORMATION PRESENTED HAS NOT BEEN AUDITED, AND IS BASED UPON OLSEN'S OWN BOOKS AND RECORDS AND BUSINESS EXPERIENCE. THE COURT HAS NOT VERIFIED THE ACCURACY OF THE INFORMATION CONTAINED HEREIN, AND THE COURT'S APPROVAL OF THIS DISCLOSURE STATEMENT MEANS ONLY THAT, IF THE INFORMATION IS ACCURATE, IT IS SUFFICIENT TO PROVIDE AN ADEQUATE BASIS FOR CREDITORS TO MAKE INFORMED DECISIONS WHETHER TO APPROVE OR REJECT THE PLAN.

The Plan will not become effective or binding upon any party in interest until it has been confirmed by the Court. The Bankruptcy Code requires that a Plan must be submitted to holders of claims against the debtors, certain of whom must be provided with an opportunity to vote on whether to accept or reject it. In addition, any solicitation of acceptances or rejections of the Plan must be accompanied by disclosure materials approved by the Court as containing "adequate information." "Adequate information" is described by the Code as information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, to enable a hypothetical reasonable investor typical of solicited claimants to make an informed judgment about the Plan and the acceptance or rejection thereof.

In short, creditors with allowed claims are entitled to vote on the Plan, and the party seeking approval of the Plan must provide those creditors with sufficient information so that they can have a meaningful vote. This is the purpose of this Disclosure Statement.

This Disclosure Statement must be approved by the court prior to the debtors' soliciting acceptances of the Plan. The court shall then set a hearing date for confirmation of the Plan. Creditors may vote on the Plan by mailing a ballot provided by Olsen, after approval of this Disclosure Statement. In determining whether the Plan should be confirmed, the court will consider

whether the Plan satisfies the various requirements of the Bankruptcy Code, including whether it is feasible and whether it is in the best interests of creditors. The court will also receive and consider a ballot report prepared by Olsen, or their agents, concerning the votes for acceptance or rejection of the Plan by the parties entitled to vote.

Acceptance of the Plan is sought only from those holders of claims which are "impaired" by the Plan: that is acceptance is solicited only from those creditors whose legal, equitable or contractual rights are altered by the Plan or who will not receive under the Plan the amount of their allowed claim in cash. Holders of claims which are not impaired under the Plan are deemed to have accepted the Plan pursuant to 11 U.S.C. 1126(f).

Section 1129(b) of the Code provides that, if the Plan is rejected by one or more impaired classes, the Plan, or modification thereof, may nevertheless be confirmed by the Court provided that the Court determines that the Plan does not discriminate unfairly and is fair and equitable with respect to the rejecting class or classes of claims impaired under the Plan. It is the intent of Olsen to seek such confirmation by the Court in the event one or more impaired classes rejects the Plan.

## II. HISTORY OF DEBTORS

Allan Olsen is aged 45 and his wife Wendi is aged 44. The couple were married in 1988, and have lived in Arizona ever since. They have five children, all of whom still live at home.

Allan Olsen sustained a disabling stroke in 1991. Since that time, he and his wife have earned their income by buying, renovating, renting, and in some cases selling, small residential properties. They currently own nine such properties, all of which are located on South California Street in Chandler, Arizona.

The Olsens have owned each of these properties since 2000. They acquired them in a package from Mr. Olsen's mother, Linda Olsen and from Mrs. Olsen's father, Ramon Anderson. They refinanced each of these properties after acquiring them from their family, with such refinancings generally accomplished by the year 2000. After purchasing the properties, and prior to their refinancing, Olsen renovated and obtained tenants in many of these properties.

The properties are rented almost entirely to Hispanic migrant workers. Those workers are almost never able to pay a security deposit and typically rent on a month to month basis. The

3

1  average tenure of these tenants would be less than six months.

2       As a result of these factors, the properties require intensive property management, which the

3  Olsens provide, with the assistance of an on-site assistant.  Olsens are required to inspect the

4  properties on a regular basis, and to keep them in good repair.

5       Units within the properties typically rent from between $500 and $600 per month, the tenant

6  paying for gas and electricity, and the landlord paying for water and trash removal.

7       The units were built in the 1960s, to the best of Olsen's knowledge.

8       Beginning in late 2008, the amount of itinerant agricultural workers living in Metropolitan

9  Phoenix, began reducing substantially.  Those workers moved to other areas of the country, or to

10  Mexico for a variety of reasons.  As a result, Olsen's vacancy rates skyrocketed, and they were

11  unable to keep current on the mortgage and other obligations on the properties.

12       The debtors were unable to sell or refinance these properties, in order to satisfy their existing

13  lenders, firstly because the properties themselves no longer showed a sufficient cash flow, and

14  secondly, because of the general steep decline in real estate  values in Metropolitan Phoenix, and

15  subsequent drying up of the mortgage markets, which took place in 2008 and later.

16       In early 2009, the debtors lost through trustee's sales, five similar properties which they

17  owned.  They filed a Chapter 11 bankruptcy petition on July 15, 2009.

18  **III.    POST BANKRUPTCY DEVELOPMENTS**

19       Since filing bankruptcy, the debtors have made every effort to fill their vacant units.  They

20  currently have a total of 28 units to rent, and of these, 21 are now occupied.

21       Two lenders commenced proceedings in bankruptcy court, to obtain lifting of the automatic

22  stay so as to be able to continue with previously scheduled trustee's sales.  Those lenders, or at least

23  the nominal lenders, are HSBC Bank USA, who asserts a first lien on both 611 and 671 South

24  California Street, and Home Eq Servicing, a nominal holder of a first lien on each of 551 and 601

25  South California.    The debtors have or are in the process of negotiating interim payment

26  arrangements with those lenders.  Those interim payment arrangements will be modified by the

27  debtor's Plan of Reorganization, if and when confirmed.

28

# IV.   DEBTOR'S ASSETS AND VALUATION THEREOF

## A.  Rental Properties

The debtors own nine separate rental properties, which for analysis purposes may be divided into three different types:

One class consists of 4-plexes containing two bedroom units - specifically, 531 and 551 South California Street. Olsen values each of these properties at $59,000. This valuation is based upon the recent sale of two properties, which are almost identical to the debtor's properties, at 571 and 591 South California Street; those properties sold recently for $56,000 each.

The next category consists of 4-plexes containing one bedroom units. In this category, are Olsen's properties at 521, 561, 581 and 602 South California Street. Olsen values each of these properties at $56,000. That valuation is based upon the recent listing of an identical property at 541 South California Street for sale by its current owner at $53,000.

The third category consists of duplex units. In this category are the debtor's properties at 611, 661, and 671 South California Street. Olsen values these properties at $39,000 each, based on the recent sale of a comparable property at 641 South California Street for $36,000.

## B.  Residence

The debtors own their own residence at 872 North Harmony Avenue in Gilbert. This property is subject to an existing first mortgage, the balance owed on which is approximately $382,500. Olsens value this property at $270,000, based upon the recent sale of a similar property at 1758 East Marquette Drive in Gilbert for $270,000.

## C.  Timeshares

The debtors own two timeshares, one on a property in Sedona, which is subject to a lien in the amount of $11,167, which amount equals or exceeds the value of the property. The other timeshare is on a property in Lake Havasu City: the debtors value it at $3,000, and there is no lien on this property.

## D.  Personal Property

The debtors also own personal property, including a 2001 Ford Excursion, a 2001 Ford F-150 pickup truck, and various household and personal effects. All of that property is exempt, and

is unavailable for the claims of creditors. Finally, the debtors own a 1990 Ski Centurion boat, which they value at $3,000.

**V.     SUMMARY OF PLAN OF REORGANIZATION**

The proposed Plan of Reorganization is attached as an exhibit to this Disclosure Statement, The Plan divides Olsen's creditors into eighteen separate classes. Because each property is at least arguably unique, each lien holder has been placed in its own class. Unless expressly stated in the Plan, distributions to the holders of allowed claims are considered to be in full satisfaction of such claims, including any interest which otherwise would have accrued thereon, costs and attorney's fees. No distribution will be made on any disputed claims, unless and until they become allowed claims.

The classes are as follows:

A.     CLASS I.     <u>Administrative Expenses.</u>

Administrative expense claims, which are approved by the court, along with any outstanding fees to the U.S. Trustee, shall be paid in full in cash within 30 days of the Effective Date, unless the creditor agrees to extended payment terms.

The debtor anticipates that any administrative expense claims will be minimal.

B.     CLASS II.     <u>Maricopa County Treasurer.</u>

Any and all property taxes owed to the Maricopa County Treasurer, shall be paid in full within 60 days of the Effective Date of the Plan.

The Plan of Reorganization requires that the debtors make impound tax and insurance payments to the lienholders involved, thereby providing security for the payment of such amounts as fall due in future. The debtors believe that all property taxes on their properties are current, except for 521 South California, where taxes of $1,621.18 are owed. The debtor will pay this sum from a loan from Ramon Anderson referred to in Article VI below.

C.     CLASS III.     <u>Income Taxing Authorities.</u>

The debtors shall pay all claims of the Internal Revenue Service ("IRS") and the Arizona Department of Revenue ("ADOR"), which are approved either by the debtor or by the court together with interest at the rate of 5.0% per annum, calculated from and after the Effective Date of the Plan,

in 60 equal monthly installments, commencing 30 days following the Effective Date.

The debtors do not believe they owe anything to either the IRS or the ADOR. The IRS filed a proof of claim for unpaid income taxes for the years 2004-2008 inclusive, in an amount exceeding $1,000,000. That claim was only an estimate, because the debtors had not filed returns for any of those years.

They have now filed their income tax returns for 2006, 2007 and 2008. These returns show no tax liability. They expect to file their 2004 and 2005 returns within the next 60 days and again, do not expect to have any tax liability for those years.

D.     CLASS IV.     City of Chandler.

All payments owed to the City of Chandler for water and trash removal, and for rental taxes shall be paid at the rate of $500 per month or more, commencing on the first day of the month following the Effective Date.

The debtors estimate that they owe approximately $10,000 to this creditor.

E.     CLASS V.     Citi Mortgage Inc.

The loan from Citi Mortgage Inc., in such amount as may be approved either by the debtors or by the court, purportedly secured by a first deed of trust upon the debtor's residence at 872 N. Harmony Avenue, Gilbert, Arizona, shall be treated as fully secured.

Such claim shall be paid with interest at 2% per annum, calculated from and after the Effective Date, for the first 5 years following the Effective Date, and interest thereafter at the rate of 4.5% per annum. The loan shall be paid in payments of $1000 per month, plus one-twelfth of estimated property taxes and insurance, on the first day of the month following the Effective Date of the Plan, and on the first day of each month thereafter until 18 months following the Effective Date. Payments shall then increase to $1250 per month, plus one-twelfth of estimated annual property taxes and insurance, until 5 years following the Effective Date. The remaining balance shall then be amortized over 25 years and paid in equal monthly payments commencing on the first day of the 61st month following the Effective Date, and continuing until paid in full. All payments shall be applied first to post-petition interest, with the balance to principal.

The debtors hereby approve such claim in the amount of $382,000.

Any outstanding default shall be deemed cured upon confirmation of this plan. Any arrears shall be capitalized and included within the principal balance set for th above.

F.      CLASS VI.      <u>Diamond Resorts International.</u>

That loan from Diamond Share International Inc., secured by a trust deed on the debtors' property in Sedona, Arizona, shall be paid by surrender of the debtors' interest in such timeshare to this creditor. Such debt is in the approximate amount of $11,000.

G.      CLASS VII.      <u>Linda Eikenbarry.</u>

The loan from Linda Olsen Eikenbarry, in such amount as may be approved either by the debtors or by the court, secured by a first deed of trust on that property known as 521 S. California Street, Chandler, Arizona, shall be treated as secured in the amount of $56,000, and unsecured for the balance. Linda Eikenbarry is the mother of debtor Allan Olsen. The loan represents a purchase money obligation, dating back to the debtors' acquisition of the property from Ms. Eikenbarry in 2000. The property is a four-plex, containing one bedroom units.

The secured portion shall be paid with interest at 6% per annum, calculated from and after the Effective Date, in payments of $358.39 per month, plus one-twelfth of estimated annual taxes and insurance on the first day of the month following the Effective Date of the Plan, and on the first day of each month thereafter until paid.

All payments shall be applied firstly on interest accrued after the Effective Date with the balance on principal.

The unsecured portion shall be paid at the same rate and time as those general unsecured claims described in Article V (S) hereof, and this creditor shall share pro rata with all creditors in that class.

The debtors believe that they owe Mrs. Eikenbarry approximately $160,000.

H.      CLASS VIII.      <u>First Trust Deed Holder on 531 S. California, Chandler</u>

The loan in favor of Wachovia Mortgage, in such amount as may be approved either by the debtors or by the court, purportedly secured by a first deed of trust upon that property at 531 S. California, Chandler, Arizona, shall be treated as secured in the amount of $59,000 and unsecured for the balance. The property is a four-plex containing two bedroom units.

8

The secured portion shall be paid with interest at 6% per annum, calculated from and after the Effective Date, in payments of $377.59 per month, plus one-twelfth of estimated annual taxes and insurance, on the first day of the month following the Effective Date of the Plan, and on the first day of each month thereafter until paid.

The unsecured portion shall be paid at the same rate and time as those general unsecured claims described in Article V (S) hereof, and this creditor shall share pro rata with all creditors in that class.

The debtors believe that they owe this claimant approximately $87,000.

I.      CLASS IX.      First Trust Deed Holder on 551 S. California, Chandler

The loan in favor of Barclays Capital Real Estate Inc., dba Home Eq Services on 551 S. California, Chandler, in such amount as may be approved either by the debtors or by the court, purportedly secured by a first deed of trust upon that property at 551 S. California, Chandler, Arizona, shall be treated as secured in the amount of $59,000 and unsecured for the balance. This property is a four-plex containing two bedroom units.

The secured portion shall be paid with interest at 6% per annum, calculated from and after the Effective Date, in payments of $377.59 per month, plus one-twelfth of estimated annual taxes and insurance, on the first day of the month following the Effective Date of the Plan, and on the first day of each month thereafter until paid.

The unsecured portion shall be paid at the same rate and time as those general unsecured claims described in Article V (S) hereof, and this creditor shall share pro rata with all creditors in that class.

This creditor claims it is owed $132,816.93.

J.      CLASS X.      First Trust Deed Holder on 561 S. California, Chandler

The loan in favor of GMAC Mortgage on 561 S. California, Chandler, in such amount as may be approved either by the debtors or by the court, purportedly secured by a first deed of trust upon that property at 561 S. California, Chandler, Arizona, shall be treated as secured in the amount of $56,000 and unsecured for the balance. The property is a four-plex containing one bedroom units.

The secured portion shall be paid with interest at 6% per annum, calculated from and after

the Effective Date, in payments of $358.39 per month, plus one-twelfth of estimated annual taxes and insurance, on the first day of the month following the Effective Date of the Plan, and on the first day of each month thereafter until paid.

The unsecured portion shall be paid at the same rate and time as those general unsecured claims described in Article V (S) hereof, and this creditor shall share pro rata with all creditors in that class.

GMAC Mortgage has filed a proof of claim, asserting that it is owed $201,269.77.

K.    CLASS XI.    First Trust Deed Holder on 581 S. California, Chandler

The loan in favor of Barclays Capital Real Estate Inc., dba Home Eq Servicing on 581 S. California, Chandler, in such amount as may be approved either by the debtors or by the court, purportedly secured by a first deed of trust upon that property at 581 S. California, Chandler, Arizona, shall be treated as secured in the amount of $56,000 and unsecured for the balance. This property is a four-plex, containing one bedroom units.

The secured portion shall be paid with interest at 6% per annum, calculated from and after the Effective Date, in payments of $358.39 per month, plus one-twelfth of estimated annual taxes and insurance, on the first day of the month following the Effective Date of the Plan, and on the first day of each month thereafter until paid.

The unsecured portion shall be paid at the same rate and time as those general unsecured claims described in Article V (S) hereof, and this creditor shall share pro rata with all creditors in that class.

The debtors believe that they owe this claimant approximately $119,000.

L.    CLASS XII.    First Trust Deed Holder on 601 S. California, Chandler

The loan from Barclays Capital Real Estate Inc., dba Home Eq Servicing on 601 S. California, Chandler, in such amount as may be approved either by the debtors or by the court, purportedly secured by a first deed of trust upon that property at 601 S. California, Chandler, Arizona, shall be treated as secured in the amount of $56,000 and unsecured for the balance. This property is a four-plex, containing one bedroom units.

The secured portion shall be paid with interest at 6% per annum, calculated from and after

the Effective Date, in payments of $358.39 per month, plus one-twelfth of estimated annual taxes and insurance, on the first day of the month following the Effective Date of the Plan, and on the first day of each month thereafter until paid.

The unsecured portion shall be paid at the same rate and time as those general unsecured claims described in Article V (S) hereof, and this creditor shall share pro rata with all creditors in that class.

This creditor asserts that it is owed $118,748.31.

M.     CLASS XIII.   First Trust Deed Holder on 611 S. California, Chandler

The loan from Countrywide Home Loans or assignee on 611 S. California, Chandler, in such amount as may be approved either by the debtors or by the court, purportedly secured by a first deed of trust upon that property at 611 S. California, Chandler, Arizona, shall be treated as secured in the amount of $39,000 and unsecured for the balance. This property is a duplex.

The secured portion shall be paid with interest at 6% per annum, calculated from and after the Effective Date, in payments of $249.59 per month, plus one-twelfth of estimated annual taxes and insurance, on the first day of the month following the Effective Date of the Plan, and on the first day of each month thereafter until paid.

The unsecured portion shall be paid at the same rate and time as those general unsecured claims described in Article V (S) hereof, and this creditor shall share pro rata with all creditors in that class.

This creditor has filed a proof of claim asserting that it is owned $93,470.84.

N.     CLASS XIV.   First Trust Deed Holder on 661 S. California, Chandler

The loan from EMC Mortgage Corp on 661 S. California, Chandler, in such amount as may be approved either by the debtors or by the court, purportedly secured by a first deed of trust upon that property at 661 S. California, Chandler, Arizona, shall be treated as secured in the amount of $39,000 and unsecured for the balance. This property is a duplex.

The secured portion shall be paid with interest at 6% per annum, calculated from and after the Effective Date, in payments of $249.59 per month, plus one-twelfth of estimated annual taxes and insurance, on the first day of the month following the Effective Date of the Plan, and on the first

day of each month thereafter until paid.

The unsecured portion shall be paid at the same rate and time as those general unsecured claims described in Article V (S) hereof, and this creditor shall share pro rata with all creditors in that class.

The debtors believe that they owe this claimant approximately $87,000.

O.      CLASS XV.   First Trust Deed Holder on 671 S. California, Chandler

The loan from Countrywide Home Loan or assignee on 671 S. California, Chandler, in such amount as may be approved either by the debtors or by the court, purportedly secured by a first deed of trust upon that property at 671 S. California, Chandler, Arizona, shall be treated as secured in the amount of $39,000 and unsecured for the balance. This property is a duplex.

The secured portion shall be paid with interest at 6% per annum, calculated from and after the Effective Date, in payments of $249.59 per month, plus one-twelfth of estimated annual taxes and insurance, on the first day of the month following the Effective Date of the Plan, and on the first day of each month thereafter until paid.

The unsecured portion shall be paid at the same rate and time as those general unsecured claims described in Article V (S)  hereof, and this creditor shall share pro rata with all creditors in that class.

This creditor has filed proof of claim, asserting that it is owed $93,597.75.

P.      CLASS XVI.   Lenders Who Have Completed Foreclosures.

Those creditors who have completed trustee's sales on the following properties;

2443 E. Mobile Lane, Phoenix

2439 E. Mobile Lane, Phoenix

2541 E. Corona, Phoenix

571 S. California Street

591 S. California Street

541 S. California Street

shall retain such properties in full satisfaction of their claims.

Q.      CLASS XVII. Administrative Convenience Class.  - Class XVII consists of

12

unsecured creditors whose claims are under $500. These creditors are classified separately for administrative convenience.

Each Class XVII claimant whose claims of under $500 is approved either by the debtor or by the court, shall have the following options:

(a) To elect to accept a cash sum equal to 15% of the amounts of such approved claim, thirty days following the Effective Date, in full satisfaction of such claim, or

(b) To accept payment in the same manner and on the same terms as Class XVIII claimants.

Such election shall be made by each such Class XVII claimant at the same time as such claimant casts its ballot to confirm or reject this Plan. In the event no such election is timely made by a Class XVII claimant, such claimant shall be deemed to have elected treatment in accordance with Option (b) hereinabove.

In addition, any Class XVIII claimant whose claim is in excess of $500.00, and whose claim is approved either by the debtor or by the court, shall have the option of receiving the sum of $75 in cash, 30 days following the Effective Date, in full satisfaction of such claim. Such option must be exercised in writing at the time a ballot is cast to confirm or reject the Plan.

R.    CLASS XVIII.    General Unsecured Creditors.

All other creditors not specifically included in any other class, shall be included in Class XVIII.

The debtors shall pay the sum of $50,000, to be divided pro rata amongst all creditors in this class and the unsecured portion of the claims of creditors in Classes VII-XV inclusive. Such sum shall be paid without interest as follows:

i) $5,000 within 60 days from the Effective Date

ii) $45,000 within 5 years from the Effective Date;

PROVIDED HOWEVER that in the event of the sale of any real property owned by the debtors, prior to 3 years from the Effective Date, the debtors shall pay all sums over and above those sums required to retire the liens of the First Trust Deed Holders on such properties, in the secured amounts listed above, to Class XVIII. Any such payment shall be applied towards that $40,000

13

obligation referred to hereinabove.

**VI.     MEANS FOR IMPLEMENTATION OF PLAN**

Monthly Payments

The debtors shall pay those monthly payments owed to holders of first deeds of trust on real property owned by the debtors and leased out by the debtors, meaning the following described properties: 521, 531, 551, 561, 581 ,601, 611, 661, and 671 S. California Street, Chandler, from the monthly rental payments received by the debtors from the rental of such properties.

The debtors shall pay the monthly mortgage payments owed on their residence at 872 S. Harmony Street, Gilbert, to Citi Mortgage Inc., from the debtors' net property management income.

The debtors shall make those lump sum payments described in paragraphs V (B), ( R) and S (i), from a post-petition loan of $10,000 to be advanced to them by Ramon Anderson, the father of debtor Wendi Olsen.

The debtors shall pay the balance owed under the Plan to Class XVIII creditors, and as set forth in Article V (S)(ii)  to those First Trust Deed Holders who share in distributions to Class XVIII, from the sale of one or more parcels of real property owned by them, by no later than 5 years from the Effective Date of the Plan.

The debtors shall have the right to sell any property owned by them, so long as such sale produces sufficient to pay in full those secured amounts described hereinabove, and so long as any balance over such amount is applied to meet the debtors' obligations under paragraph V (S) hereinabove.

**VII.     APPROVAL**

The debtors hereby approve those claims listed in Exhibit B hereto, in the amounts listed in Exhibit B.  Any creditor satisfied with the approval amounts set forth in Exhibit B need not file a proof of claim.  Any creditor whose claim is not listed in Exhibit B, or is approved in an amount unacceptable to the creditor, must file a proof of claim with the court, by a bar date set by the court under separate order.

**VIII.     FEASIBILITY**

The feasibility of the debtor's Plan is shown by those rental projections attached hereto as

14

Exhibit C.

**IX.     SECTION 1111 (b) ELECTION**

Bankruptcy law provides that secured creditors have the right to make an election under s.1111(b) of the Bankruptcy Code. The debtor will ask the court to set a bar date for the filing of any such election.

The claim of any creditor making a Section 1111(b) election, will be treated as fully secured, and such creditor will not share in those distributions described in Article V (S). That creditor will continue to receive the monthly payments on their claim set forth hereinabove.

**X.     LIQUIDATION ANALYSIS**

The alternative to this or another Plan of Reorganization is liquidation of Olsen's property. All of the debtors' real property is "under water", meaning that the total amount owed on each such property exceeds its value, by a substantial margin. Thus, liquidation through a Chapter 7 trustee would bring nothing, to unsecured creditors.

The debtors' vehicles and household and personal effects, are exempt property, meaning that the debtors would keep this property even in the event of a Chapter 7 liquidation. The only non-exempt assets available to satisfy the claims of creditors, would be the timeshare in Lake Havasau City, valued at $3,000, and the 1990 ski boat, also valued at $3,000. Timeshares are notoriously difficult to sell, and it is unlikely that liquidation of a timeshare would bring anything significant to creditors. The ski boat could be sold, but after a trustee's fees and perhaps a trustee's attorney's fees are paid, there would be little or nothing left for unsecured creditors. It appears clear that the Plan of Reorganization proposed by the debtors offers the possibility of significantly greater returns to unsecured creditors.

As to the secured creditors, if the Plan were not confirmed, and these lenders were ultimately allowed by the Bankruptcy Court to foreclose on their properties, Olsens believe that the results for those lenders would be less favorable that what is offered through the Plan. The debtors are offering to pay the secured creditors at least as much or more than those properties are worth under current market conditions. Were the lenders to foreclose, they would be left with properties which are both difficult to manage, and difficult to sell. The properties are in a somewhat unique rental market,

with a virtual revolving door of tenants, none of whom have the resources to post security deposits, or the desire to sign long-term leases that are enforceable. The experience of other lenders who foreclosed on other properties in the surrounding neighborhood have not been favorable.

## XI. LITIGATION

The debtor is not currently involved in any litigation, other than the lift stay litigation described in Article III hereof.

## XII. VOTING

Creditors holding allowed claims which are impaired, and parties in interest whose interests are impaired, are entitled to vote. Neither Classes I and III are entitled to vote, as a matter of bankruptcy law.

Ballots will be sent to the known holders of allowed claims and all disputed claims. However, only the holders of allowed claims or allowed interests (or claims and interests which are deemed allowed or have been estimated by the Court) who are impaired are entitled to vote on the Plan. A claim to which an objection has been filed is not an allowed claim unless and until the Court rules on the objection and any appeals are finally determined. The holders of such disputed claims are not entitled to vote on the Plan unless they request that the Court, pursuant to Rule 3018, Federal Rules of Bankruptcy Procedure, temporarily allow their claims in appropriate amounts solely for the purpose of enabling the holders of such disputed claims to vote on the Plan, and the Court grants such request.

The forms of ballot for each of the classes entitled to vote on the Plan will be sent to you with a copy of the Court-approved Disclosure Statement and the Plan. Please read the ballot carefully. If you have any questions concerning voting procedures, you may contact Olsen's attorney, J. Kent MacKinlay, at the address provided immediately below.

**YOU MUST RETURN YOUR BALLOTS TO:**

J. Kent MacKinlay
WARNOCK, MACKINLAY & CARMAN, P.L.L.C.
1019 S. Stapley Dr.
Mesa, Arizona 85204
(480) 898-9239

Even though a creditor may not choose to vote or may vote against the Plan, the creditor will

be bound by the terms and treatments set forth in the Plan if the Plan is accepted by the requisite majorities in each Class of creditors and/or is confirmed by the Court. Creditors who fail to vote will not be counted in determining acceptance or rejection of the Plan. Allowance of a claim or interest for voting purposes does not necessarily mean that the claim will be allowed or disallowed for purposes of distribution under the terms of the Plan. Any claim to which an objection has been or will be made will be allowed only for distribution after determination by the Court. Such determination may be made after the Plan is confirmed.

In order for the Plan to be deemed accepted by a class of creditors deemed impaired, creditors that hold at least two-thirds (2/3) in the dollar amount and more than one-half (½) in the total number of allowed claims of creditors in that class who vote on the Plan must accept the Plan. Under certain limited circumstances more fully described in 11 U.S.C. §1129(b), the Court may confirm a Plan notwithstanding the rejection thereof by more than 1/3 in amount or ½ in number of the creditors of any given class voting on the Plan. The debtor intends to seek confirmation under 11 U.S.C. §1129(b) in the event one or more classes of creditors or parties in interest rejects the Plan.

DATED this 25th day of November, 2009

      /s/ Allan Olsen
Allan Olsen

      /s/ Wendi Olsen
Wendi Olsen

   /s/ J. Kent MacKinlay, #007204
J. Kent MacKinlay
Attorney for Debtor

17

# EXHIBIT A

WARNOCK, MacKINLAY & CARMAN, P.L.L.C.
1019 South Stapley
Mesa, Arizona 85204
(480) 898-9239

J. Kent MacKinlay, No. 7204
Attorney for Debtor

## IN THE UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| In re | **Chapter 11** |
| ALLAN AND WENDI OLSEN | **No.    2:09-bk-16352 - PHX-GBN** |
| Debtors | **PLAN OF REORGANIZATION** |

### ARTICLE I
### DEFINITIONS

For the purposes of this plan, and any amendments thereto, the following terms shall have the meanings set forth in this Article:

    1.1    ADMINISTRATIVE CLAIM. Every cost or expense of administration in this bankruptcy case, in accordance with 11 U.S.C 503(b).

    1.2    APPROVED CLAIMS. The claims of any creditor which are approved by the debtor in this Plan of Reorganization, or, if not so approved by the debtor, are approved by the Court.

    1.3    CLAIM. A claim of a creditor which has been filed with the Bankruptcy Court prior to the bar dates set in this case, and which is allowed (or disallowed) by the Bankruptcy Court.

    1.4    CONFIRMATION AND CONFIRMATION ORDER. The entry of an order by the Court confirming the plan.

    1.5    CONTINGENT CLAIM. Any claim arising prior to confirmation of the Plan, as

18

to which the amount of said claim is unknown or has not been determined by the Court.

   1.6  COURT. The United States Bankruptcy Court for the District of Arizona.

   1.7  CREDITOR. All creditors of the debtor holding claims for debts, liabilities, demands or claims of any character whatsoever.

   1.8  DEBTOR. Allan and Wendi Olsen, husband and wife ("Olsen") or ("Debtor").

   1.9  EFFECTIVE DATE.  30 days following the entry of a Confirmation Order, provided no stay of such Order is in effect.  If a stay of such order is in effect, the Effective Date shall be 30 days following the lifting of such stay.

   1.10  PLAN.  This Plan of Reorganization in its present form, or as the same may be amended or supplemented.

   l.11  PRIORITY CLAIM.  Any claim entitled to priority under 11 U.S.C. 507(a)(l-7).

   1.12  SECURED CLAIM.  Any claim secured or partly secured by a lien of any kind on property of the Estate.

   1.13  UNSECURED CLAIM.  Any claim not secured by a valid lien on property of the Estate.

**ARTICLE II**
**CLASSES OF CLAIMS AND INTERESTS**

   2.1  CLASS I.  Administrative expense claims.

   2.2  CLASS II.  Maricopa County Treasurer

   2.3  CLASS III  Income Taxing Authorities

   2.4  CLASS IV.  City of Chandler

   2.5  CLASS V.  Citi Mortgage Inc.

   2.6  CLASS VI.  Diamond Resorts International

   2.7  CLASS VII.  Linda Eikenbary

   2.8  CLASS VIII. First Trust Deed Holder on 531 S. California, Chandler

   2.9  CLASS IX.  First Trust Deed Holder on 551 S. California, Chandler

   2.10  CLASS X.  First Trust Deed Holder on 561 S. California, Chandler

| 1 | 2.11 | CLASS XI. | First Trust Deed Holder on 581 S. California, Chandler |
|---|------|-----------|-------------------------------------------------------|
| 2 | 2.12 | CLASS XII. | First Trust Deed Holder on 601 S. California, Chandler |
| 3 | 2.13 | CLASS XIII. | First Trust Deed Holder on 611 S. California, Chandler |
| 4 | 2.14 | CLASS XIV. | First Trust Deed Holder on 661 S. California, Chandler |
| 5 | 2.15 | CLASS XV. | First Trust Deed Holder on 671 S. California, Chandler |
| 6 | 2.16 | CLASS XVI. | Lenders Who Have Completed Foreclosure |
| 7 | 2.17 | CLASS XVII. | Administrative Convenience Class |
| 8 | 2.18 | CLASS XVIII. | General Unsecured Creditors |

**ARTICLE III**
**TREATMENT OF CLAIMS UNDER THE PLAN**

3.1   CLASS I.   <u>Administrative Expenses.</u>

Administrative expense claims, which are approved either by the debtor or by the court, along with any outstanding fees to the U.S. Trustee, shall be paid in full in cash within 30 days of the Effective Date, unless the creditor agrees to extended payment terms.

3.2   CLASS II.   <u>Maricopa County Treasurer.</u>

Any and all property taxes owed to the Maricopa County Treasurer, shall be paid in full within 60 days of the Effective Date of the Plan.

3.3   CLASS III.   <u>Income Taxing Authorities.</u>

The debtors shall pay all claims of the Internal Revenue Service ("IRS") and the Arizona Department of Revenue ("ADOR"), which are approved either by the debtor or by the court, together with interest at the rate of 5.0% per annum, calculated from and after the Effective Date of the Plan, in 60 equal monthly installments, commencing 30 days following the Effective Date.

3.4   CLASS IV.   <u>City of Chandler.</u>

All payments owed to the City of Chandler for water and trash removal, shall be paid at the rate of $500 per month or more, commencing on the first day of the month following the Effective Date, and continuing until paid.

3.5   CLASS V.   <u>Citi Mortgage Inc.</u>

The loan from Citi Mortgage Inc., in such amount as may be approved either by the

20

debtors or by the court, purportedly secured by a first deed of trust upon the debtor's residence at 872 N. Harmony Avenue, Gilbert, Arizona, shall be treated as fully secured.

Such claim shall be paid with interest at 2% per annum, calculated from and after the Effective Date, for the first 5 years following the Effective Date, and interest thereafter at the rate of 4.5% per annum. The loan shall be paid in payments of $1000 per month, plus one-twelfth of estimated property taxes and insurance, on the first day of the month following the Effective Date of the Plan, and on the first day of each month thereafter until 18 months following the Effective Date. Payments shall then increase to $1250 per month, plus one-twelfth of estimated annual property taxes and insurance, until 5 years following the Effective Date. The remaining balance shall then be amortized over 25 years and paid in equal monthly payments commencing on the first day of the 61st month following the Effective Date, and continuing until paid in full. All payments shall be applied first to post-petition interest, with the balance to principal.

The debtors hereby approve such claim in the amount of $382,000.

Any outstanding default shall be deemed cured upon confirmation of this plan. Any arrears shall be capitalized and included within the principal balance set for th above.

3.6     CLASS VI.     Diamond Resorts International.

That loan from Diamond Share International Inc., secured by a trust deed on the debtors' timeshare property in Sedona, Arizona, shall be paid by surrender of the debtors' interest in such timeshare to this creditor.

3.7     CLASS VII.     Linda Eikenbarry.

The loan from Linda Eikenbarry, in such amount as may be approved either by the debtors or by the court, purportedly secured by a first deed of trust on that property known as 521 S. California Street, Chandler, Arizona, shall be treated as secured in the amount of $56,000, and unsecured for the balance.

The secured portion shall be paid with interest at 6% per annum, calculated from and after the Effective Date, in payments of $358.39 per month, plus one-twelfth of estimated annual taxes and insurance,  on the first day of the month following the Effective Date of the Plan, and

21

on the first day of each month thereafter until paid.

All payments shall be applied firstly on interest accrued after the Effective Date with the balance on principal.

The unsecured portion shall be paid at the same rate and time as those general unsecured claims described inArticle V (S) hereof, and this creditor shall share pro rata with all creditors in that class.

3.8     CLASS VIII.   <u>First Trust Deed Holder on 531 S. California, Chandler</u>

The loan in favor of Wachovia Mortgage, in such amount as may be approved either by the debtors or by the court, purportedly secured by a first deed of trust upon that property at 541 S. California, Chandler, Arizona, shall be treated as secured in the amount of $59,000 and unsecured for the balance.

The secured portion shall be paid with interest at 6% per annum, calculated from and after the Effective Date, in payments of $377.59 per month, plus one-twelfth of estimated annual taxes and insurance on the first day of the month following the Effective Date of the Plan, and on the first day of each month thereafter until paid.

The unsecured portion shall be paid at the same rate and time as those general unsecured claims described in paragraph 3.18 hereof, and this creditor shall share pro rata with all creditors in that class.

3.9     CLASS IX.     <u>First Trust Deed Holder on 551 S. California, Chandler</u>

The loan in favor of Home Eq Services on 551 S. California, Chandler, in such amount as may be approved either by the debtors or by the court, purportedly secured by a first deed of trust upon that property at 551 S. California, Chandler, Arizona, shall be treated as secured in the amount of $59,000 and unsecured for the balance.

The secured portion shall be paid with interest at 6% per annum, calculated from and after the Effective Date, in payments of $377.59 per month, plus one-twelfth of estimated annual taxes and insurance on the first day of the month following the Effective Date of the Plan, and on the first day of each month thereafter until paid.

The unsecured portion shall be paid at the same rate and time as those general unsecured

claims described in paragraph 3.18 hereof, and this creditor shall share pro rata with all creditors in that class.

3.10    CLASS X.    First Trust Deed Holder on 561 S. California, Chandler

The loan in favor of GMAC Mortgage on 561 S. California, Chandler, in such amount as may be approved either by the debtors or by the court, purportedly secured by a first deed of trust upon that property at 561 S. California, Chandler, Arizona, shall be treated as secured in the amount of $56,000 and unsecured for the balance.

The secured portion shall be paid with interest at 6% per annum, calculated from and after the Effective Date, in payments of $358.39 per month, plus one-twelfth of estimated annual taxes and insurance on the first day of the month following the Effective Date of the Plan, and on the first day of each month thereafter until paid.

The unsecured portion shall be paid at the same rate and time as those general unsecured claims described in paragraph 3.18 hereof, and this creditor shall share pro rata with all creditors in that class.

3.11    CLASS XI.    First Trust Deed Holder on 581 S. California, Chandler

The loan in favor of Home Eq Servicing on 581 S. California, Chandler, in such amount as may be approved either by the debtors or by the court, purportedly secured by a first deed of trust upon that property at 581 S. California, Chandler, Arizona, shall be treated as secured in the amount of $56,000 and unsecured for the balance.

The secured portion shall be paid with interest at 6% per annum, calculated from and after the Effective Date, in payments of $358.39 per month, plus one-twelfth of estimated annual taxes and insurance on the first day of the month following the Effective Date of the Plan, and on the first day of each month thereafter until paid.

The unsecured portion shall be paid at the same rate and time as those general unsecured claims described in paragraph 3.18 hereof, and this creditor shall share pro rata with all creditors in that class.

3.12    CLASS XII.    First Trust Deed Holder on 601 S. California, Chandler

The loan from Home Eq Servicing on 601 S. California, Chandler, in such amount as

may be approved either by the debtors or by the court, purportedly secured by a first deed of trust upon that property at 601 S. California, Chandler, Arizona, shall be treated as secured in the amount of $56,000 and unsecured for the balance.

The secured portion shall be paid with interest at 6% per annum, calculated from and after the Effective Date, in payments of $358.39 per month, plus one-twelfth of estimated annual taxes and insurance on the first day of the month following the Effective Date of the Plan, and on the first day of each month thereafter until paid.

The unsecured portion shall be paid at the same rate and time as those general unsecured claims described in paragraph 3.18 hereof, and this creditor shall share pro rata with all creditors in that class.

3.13    CLASS XIII.  First Trust Deed Holder on 611 S. California, Chandler

The loan from Countrywide Home Loans or assignee on 611 S. California, Chandler, in such amount as may be approved either by the debtors or by the court, purportedly secured by a first deed of trust upon that property at 611 S. California, Chandler, Arizona, shall be treated as secured in the amount of $39,000 and unsecured for the balance.

The secured portion shall be paid with interest at 6% per annum, calculated from and after the Effective Date, in payments of $249.59 per month, plus one-twelfth of estimated annual taxes and insurance on the first day of the month following the Effective Date of the Plan, and on the first day of each month thereafter until paid.

The unsecured portion shall be paid at the same rate and time as those general unsecured claims described in paragraph 3.18 hereof, and this creditor shall share pro rata with all creditors in that class.

3.14    CLASS XIV.  First Trust Deed Holder on 661 S. California, Chandler

The loan from EMC Mortgage Corp on 661 S. California, Chandler, in such amount as may be approved either by the debtors or by the court, purportedly secured by a first deed of trust upon that property at 661 S. California, Chandler, Arizona, shall be treated as secured in the amount of $39,000 and unsecured for the balance.

The secured portion shall be paid with interest at 6% per annum, calculated from and

24

after the Effective Date, in payments of $249.59 per month, plus one-twelfth of estimated annual taxes and insurance on the first day of the month following the Effective Date of the Plan, and on the first day of each month thereafter until paid.

The unsecured portion shall be paid at the same rate and time as those general unsecured claims described in paragraph 3.18 hereof, and this creditor shall share pro rata with all creditors in that class.

3.15    CLASS XV.   First Trust Deed Holder on 671 S. California, Chandler

The loan from Countrywide Home Loan or assignee on 671 S. California, Chandler, in such amount as may be approved either by the debtors or by the court, purportedly secured by a first deed of trust upon that property at 671 S. California, Chandler, Arizona, shall be treated as secured in the amount of $39,000 and unsecured for the balance.

The secured portion shall be paid with interest at 6% per annum, calculated from and after the Effective Date, in payments of $249.59 per month, plus one-twelfth of estimated annual taxes and insurance on the first day of the month following the Effective Date of the Plan, and on the first day of each month thereafter until paid.

The unsecured portion shall be paid at the same rate and time as those general unsecured claims described in paragraph 3.18 hereof, and this creditor shall share pro rata with all creditors in that class.

3.16    CLASS XVI.  Lenders Who Have Completed Foreclosures.

Those creditors who have completed trustee's sales on the following properties;

2443 E. Mobile Lane, Phoenix

2439 E. Mobile Lane, Phoenix

2541 E. Corona, Phoenix

571 S. California Street

591 S. California Street

541 S. California Street

shall retain such properties in full satisfaction of their claims.

3.17    CLASS XVII. Administrative Convenience Class.

25

Each Class XVI claimant whose claim of under $500 is approved either by the debtor or by the court, shall have the following options:

    (a) To elect to accept a cash sum equal to 15% of the amounts of such approved claim, thirty days following the Effective Date, in full satisfaction of such claim, or

    (b) To accept payment in the same manner and on the same terms as Class XVIII claimants.

Such election shall be made by each such Class XVII claimant at the same time as such claimant casts its ballot to confirm or reject this Plan.  In the event no such election is made by a Class XVII claimant, such claimant shall be deemed to have elected treatment in accordance with Option (b) hereinabove.

In addition, any Class XVIII claimant whose claim is in excess of $500.00, and whose claim is approved either by the debtor or by the court, shall have the option of receiving the sum of $75 in cash, 30 days following the Effective Date, in full satisfaction of such claim.  Such option must be exercised in writing at the time a ballot is cast to confirm or reject the Plan..

    3.18    CLASS XVIII.    <u>General Unsecured Creditors</u>.

All other creditors not specifically included in any other class, shall be included in Class XVIII.

The debtors shall pay the sum of $50,000, to be divided pro rata amongst all creditors in this class and the unsecured portion of the claims of creditors in Classes VII-XV inclusive.  Such sum shall be paid without interest as follows:

a)  $5,000 within 60 days from the Effective Date

b)  $40,000 within 5 years from the Effective Date;

PROVIDED HOWEVER that in the event of the sale of any real property owned by the debtors, prior to 3 years from the Effective Date, the debtors shall pay all sums over and above those sums required to retire the liens of the First Trust Deed Holders on such properties, in the secured amounts listed above, to Class XVIII.  Any such payment shall be applied towards that $40,000 obligation referred to hereinabove.

**<u>ARTICLE IV</u>**

26

## DEFAULT

The Debtor's failure to make any payment due under the Plan within thirty (30) days after demand for payment after its due date shall constitute a default unless the Debtor and the affected creditor agree to delayed payment.

Upon default, creditors may pursue any remedy provided by state or federal law, including foreclosing any security interest and/or suing on any promissory note issued or continued in effect under the Plan.

## ARTICLE V
## RIGHTS OF SECURED CREDITORS UNDER 11 U.S.C. 1111 (b)

Any impaired creditor holding security in any of the debtor's property, has the right under 11 U.S.C. 1111 (b), to timely make an election under that provision. The debtors will ask the court to set a bar date for the making of such election.

If such election is timely made by any creditor in Classes VII - XV inclusive, that creditor would receive the full principal amount of their approved claim, without interest, in monthly payments in the amount specified in Article 3.7 - 3.15 inclusive, until such principal amounts are paid in full.

## ARTICLE VI
## MODIFICATION OF THE PLAN

The debtors may amend or modify this Plan at any time prior to confirmation, without leave of the Court. The debtors may propose amendments or modifications of this Plan at any time subsequent to confirmation, but such amendments or modifications shall require the approval of the Court.

## ARTICLE VII
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The debtors as landlords shall assume all existing real property leases on any real property owned by them.

## ARTICLE VIII
## RETENTION OF JURISDICTION

27

8.1    The Court will retain jurisdiction until all payments required by the Plan have 2been made, for the following purposes:

(a)    The classification of the claim of any creditor and the re-examination of claims which have been allowed for purposes of voting, and the determination of such objections as may be filed to various claims. The failure by the Debtor to object to any claim for the purposes of voting, shall not be deemed to be a waiver of the Debtor's right to object to the claim following confirmation of the Plan.

(b)    Determination of all questions and disputes regarding title of the assets of the estate, and determination of all causes of action, controversies, disputes, or conflicts, whether or not subject to an action pending as of the date of confirmation, between the Debtor and any other party.

(c)    The correction of any defect, the curing of any omission, or the reconciliation of any inconsistency of the Plan or the order of confirmation as may be necessary to carry out the purposes and intent of this Plan.

(d)    The modification of this Plan after confirmation.

(e)    To enforce and interpret the terms and conditions of this Plan.

(f)    Entry of any order, including injunctions, as may be necessary to enforce the title, rights and powers of the Debtor and to impose such limitations, restrictions, terms and conditions as the Court may deem necessary.

(g)    Entry of an order concluding and terminating this case.

**ARTICLE IX**
**TREATMENT OF IMPAIRED CLASSES**

The court shall determine any controversy as to whether a class of claims is impaired under the Plan, after notice and an opportunity for hearing. All impaired classes of claims shall receive the distributions set forth as described above, on account of, and in complete satisfaction of, all claims against the debtor, and shall have no further rights or remedies against the debtor corporation or any of its assets or properties.

## ARTICLE X
## PROVISION FOR CLASSES OF IMPAIRED CLAIMS
## WHICH DO NOT ACCEPT THE PLAN

With respect to any impaired classes of claims which do not accept the Plan with the requisite vote under 11 U.S.C. 1126(c), the debtor will ask the court to confirm the Plan despite such rejection, for reason that the Plan does not discriminate unfairly, is fair and equitable with respect to the class or classes of claims that are impaired which do not accept the Plan, and otherwise complies with 11 U.S.C. 1129(b).

## ARTICLE XI
## DISCHARGE OF DEBTOR

Except as otherwise provided in the Plan or the Confirmation Order, entry of the Confirmation Order shall act as a discharge, of any and all debts, obligation, liabilities, and claims, contingent or otherwise, of the debtor that are owed at any time before the entry of the Confirmation Order, excepting for the obligations of the debtor specifically set forth in this Plan. The discharge of the debtor shall be effective as to each claim, regardless of whether a proof of claim thereof was filed, whether the claim is an allowed claim, or whether the holder thereof voted to accept the Plan.

## ARTICLE XII
## MISCELLANEOUS

12.1     Upon entry of an order confirming this Plan, all guarantees and indemnifications executed by the Debtor shall be limited solely to existing indebtedness and shall not extend to additional or future indebtedness to any creditor.

12.2     All payments made under the Plan which are returned by the Post Office undelivered, or which cannot be delivered due to lack of a current address, shall be retained by the Debtor for a period of six months from the date of the first attempt at distribution. After such six month period, the unclaimed monies or future distributions due such creditors, will vest in the Debtor, free of any claim by any creditor.

12.3     In the event this Plan is not confirmed for any reason, neither the Plan nor any

statement contained therein, nor any statement in the Disclosure Statement submitted with or prior to this Plan, may be used or relied upon in any manner in any action or controversy within or outside of this reorganization case.

DATED this 25th day of November, 2009

_/s/ Allan Olsen_____
Allan Olsen

_/s/ Wendi Olsen_____
Wendi Olsen

_/s/ J. Kent MacKinlay, #007204_
Attorney for Debtor

# EXHIBIT B

| | |
|---|---:|
| 360 Physical Therapy<br>1076 West Chandler Blvd #103<br>Chandler AZ 85224 | $166 |
| American Express<br>PO Box 0001<br>Los Angeles CA 90096 | $2,674 |
| American Express<br>c/o CollectCorp Corporation<br>455 North 3rd Street, Ste. 260<br>Phoenix AZ 85004 | $2,800 |
| Bank of America<br>PO Box 851001<br>Dallas TX 75285 | $22,500 |
| Blaine R. Couser Orthodontics<br>4540 East Baseline Road, Suite 104<br>Mesa AZ 85206 | $1,465 |
| C.C.S. Check Processing Center<br>PO Box 55126<br>Boston MA 02205 | $146 |
| Chase Bank USA, N.A.<br>PO Box 15145<br>Wilmington, DE 19850-5145 | $45,417 |
| Citi Cards<br>P.O. Box 6401<br>The Lakes NV 88901-6408 | $54,939 |
| Citi Mortgage, Inc.<br>PO Box 9438<br>Gaithersburg MD 20898 | $382,500 |
| City of Chandler, Utility<br>55 N. Arizona Place, Ste. 105<br>Chandler AZ 85225 | $8,000 |
| City of Phoenix<br>PO Box 29663<br>Phoenix AZ 85038 | $753 |
| Diamond Resorts International<br>PO Box 60480<br>Los Angeles CA 90060 | $11,167 |
| Discover Bank<br>DFS Services LLC<br>PO Box 3025<br>New Albany OH 43054-3025 | $2,348 |

| | |
|---|---|
| EMC Mortgage Corp<br>Customer Service Dept.<br>PO Box 293150<br>Lewisville TX 75029 | $90,000 |
| Gmac Mortgage, LLC<br>Pite Duncan, LLP<br>4375 Jutland Drive, Suite 200<br>San Diego, CA 92177 | $201,270 |
| Hanger Prosthetics & Orthotics West<br>PO Box 25549<br>Phoenix AZ 85002 | $280 |
| Home Depot Credit Services<br>PO Box 6926<br>The Lakes NV 88901 | $11,671 |
| Linda Olsen<br>2664 Majestic Eagle<br>Gilbert, AZ 85297 | $160,000 |
| NCO Financial Systems<br>PO Box 182965<br>Columbus OH 43218 | $252 |
| Orkin Pest Control<br>1116 South Center Street<br>Mesa AZ 85210 | $173 |
| Recovery Management Systems Corporation<br>For GE Money Bank<br>dba LOWES CONSUMER<br>25 SE 2nd Ave Ste 1120<br>Miami FL 33131 | $1,783 |
| Rollins, Inc.<br>c/o Infinity Group Recievables<br>3175 Satellite Bl, Bld. 600 Ste. 304<br>Duluth GA 30096 | $123 |
| TARGET NATIONAL BANK<br>C O WEINSTEIN AND RILEY, PS<br>2001 WESTERN AVENUE, STE 400<br>SEATTLE, WA 98121 | $6,305 |
| Wells Fargo Bank, N.A.<br>c/o Wells Fargo Card Services Recovery Department<br>P.O. Box 9210<br>Des Moines, IA 50306 | $4,640 |

# EXHIBIT C

PROJECTIONS AS TO MONTHLY RENTAL INCOME - ALLAN AND WENDI OLSEN

**A.**     **2 Bedroom 4-plexes**

| | |
|---|---|
| Gross Rents - per building | $2,360 |
| Expenses - per building | |
| Utilities | $250 |
| Repairs and Maintenance | $300 |
| Assistant Manager's Fees | $50 |
| Vacancy Allowance | $590 |
| Mortgage Payment - Principal and Interest | $378 |
| Mortgage Payment - Taxes and Insurance | $200 |
| Total Expenses | $1,768 |
| Net Income per Month - per building | $592 |
| Total net Monthly Income for 531 and 551 S. California | $1,184 |

**B.**     **1-Bedroom 4-plexes**

| | |
|---|---|
| Gross Rents - per building | $1,960 |
| Expenses - per building | |
| Utilities | $225 |
| Repairs and Maintenance | $300 |
| Assistant Manager's Fees | $50 |
| Vacancy Allowance | $490 |
| Mortgage Payment - Principal and Interest | $358 |
| Mortgage Payment - Taxes and Insurance | $200 |
| Total Expenses | $1,623 |
| Net Income per Month - per building | $337 |
| Total Net Monthly Income for 521, 561 581 and 602 S. California | $1,348 |

**C.**     **Duplexes**

| | |
|---|---|
| Gross Rents - per building | $1,200 |
| Expenses - per building | |
| Utilities | $150 |

33

| | |
|---|---:|
| Repairs and Maintenance | $150 |
| Assistant Manager's Fees | $50 |
| Vacancy Allowance | $300 |
| Mortgage Payment - Principal and Interest | $250 |
| Mortgage Payment - Taxes and Insurance | $125 |
| Total Expenses | $1,025 |
| Net Income per Month - per building | $175 |
| Total Net Monthly Income for 611, 681, and 671 S. California | $350 |

**TOTAL NET MONTHLY INCOME**      **$2,882**